Below is an Opinion of the Court.

_Elizabeth L. Perris_
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case No. |
| | ) | 10-40718-elp13 |
| ERIK V. NELSON, | ) | |
| | ) | |
| Debtor. | ) | AMENDED MEMORANDUM OPINION |
| | ) | |
| _____ | ) | |

Creditor Jennifer Odess ("Odess"), who is debtor Erik Nelson's ("debtor") ex-wife, objects to confirmation of debtor's chapter 13 plan. She argues that the plan fails to provide for full payment of debtor's obligation to Odess for what she characterizes as a domestic support obligation ("DSO"). The issue in this case is whether the obligation, which arises out of a stipulated dissolution judgment, constitutes a DSO that is a priority claim under § 507(a)(1)(A).[1] For the reasons explained below, the court concludes that the obligation is a general unsecured claim. The objections to confirmation are overruled.

////

---

[1] References to chapters and sections are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

Page 1 -  AMENDED MEMORANDUM OPINION

Odess and debtor were married on September 30, 2006. They did not have any children. The parties had jointly purchased a house during their engagement, where they resided during their marriage. On May 15, 2008, the state court entered a stipulated dissolution of marriage judgment. The judgment split the parties' property according to an agreement they had reached between themselves. Debtor was represented by counsel in the dissolution process. Odess relied on a family member who was a commercial lawyer to review the stipulated judgment.

At the time of the divorce, debtor was earning approximately $25,000 per year. Odess was starting a business, which had not generated any income, and was not otherwise employed. The parties had no equity in the house that they had purchased before the marriage.

The stipulated dissolution judgment awarded debtor the house, and required him to "assume and pay" the debt secured by the house and to "hold Wife harmless and indemnify her from" that debt. General Judgment of Dissolution of Marriage at ¶ 6.a.; 7.b (pp. 6, 7). The judgment provided that "[e]ach party expressly waives the right to receive spousal support[,]" ¶ 3 (p. 4), but also provided that, "[w]henever one party is required by the terms of this Stipulated General Judgment to assume responsibility for paying certain debts, the obligation shall be considered to be in the nature of support, which is not dischargeable in bankruptcy." ¶ 7.e (p. 7).

The judgment contained other relevant clauses. It provided that the parties believed "that no joint debt currently exists." ¶ 7.c (p. 7). The judgment said that it is "binding upon the heirs, assigns, personal

Page 2 -   AMENDED MEMORANDUM OPINION

representatives and all the successors in interest of the parties." ¶ 14
(pp. 8-9). Finally, the judgment required debtor to pay Odess $2,250 in
monthly installments of $225, as a "property money award." ¶ 29.a (pp.
11-12). The heading of the money award provisions was "Money Award
Pursuant to ORS 18.042; Includes Support Award."

After the divorce, debtor paid Odess the $2,250 property settlement
ordered in the judgment. He lived in the house; she remarried and moved
to Washington, D.C. Debtor attempted to refinance the house in his own
name and get Odess off the obligation, but was unable to find financing
or to get the loan modified. The loan amount exceeded the value of the
house. Debtor stopped making the mortgage payments in the summer of
2010. By August 2010, debtor and Odess had gotten a notice of
nonjudicial foreclosure sale. Debtor filed a chapter 13 petition in
November, 2010.

His 36-month plan treats his obligation to hold Odess harmless on
the mortgage debt as a general unsecured claim, not as a priority claim
for a DSO pursuant to § 507(a)(1)(A).

Odess objects, arguing that debtor's obligation to assume the
mortgage and hold her harmless constitutes a DSO that is entitled to
priority treatment under § 507(a)(1)(A), and therefore must be paid in
full during the life of the plan pursuant to § 1322(a)(2). Debtor
responds that the mortgage obligation was part of a property division,
not support, and so is not a DSO.

DISCUSSION

A chapter 13 plan must provide for payment, in full, of claims
entitled to priority under § 507. § 1322(a)(2). An allowed unsecured

Page 3 -  AMENDED MEMORANDUM OPINION

claim for a DSO owed to a former spouse is entitled to first priority. § 507(a)(1)(A). As relevant here, "domestic support obligation" is defined as a debt owed to a spouse or former spouse that is "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated[.]" § 101(14A).

Whether an obligation is in the nature of support and thus qualifies as a support under bankruptcy law is a question of federal law. In re Sternberg, 85 F.3d 1400, 1405 (9th Cir. 1996), rev'd on other grounds, In re Bammer, 131 F.3d 788 (9th Cir. 1997). In determining whether an obligation is a DSO entitled to priority under § 507(a), the court looks to the interpretation of DSO discussed in cases relating to the dischargeability of support under former § 523(a)(5). In re Collins, 2007 WL 1110766, *4 n.6 (Bankr. D. Or. 2007); In re Chang, 163 F.3d 1138, 1142 (9th Cir. 1998).

The issue is whether the obligation is in the nature of support. In making that determination, "the court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation." Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984). When the obligation is created by a stipulated dissolution judgment, "the intent of the parties at the time the settlement agreement is executed is dispositive." Sternberg, 85 F.3d at 1405. Factors to be considered in determining the intent of the parties include "whether the recipient spouse actually needed spousal support at the time of the divorce[,]" which requires looking at whether there was an "imbalance in the relative income of the parties" at the time of the divorce. Id. Other considerations are whether the obligation terminates on the death or

Page 4 -  AMENDED MEMORANDUM OPINION

remarriage of the recipient spouse, and whether payments are made
directly to the spouse in installments over a substantial period of time.
Id.; Shaver, 736 F.2d at 1316-1317. The labels the parties used for the
payments may also provide evidence of the parties' intent. Sternberg, 85
F.3d at 1405.

Odess makes two arguments in support of her position that the hold
harmless obligation to assume and pay the mortgage is a DSO. First, she
says that the legislative history of § 523(a)(5) indicates that "debts
resulting from an agreement by the debtor to hold the debtor's spouse
harmless on joint debts may be deemed 'support' under the Bankruptcy
Code." Jennifer Odess's Post-Hearing Memorandum at 2. From this she
argues that hold-harmless provisions such as the one in this stipulated
judgment are support.

Before BAPCPA in 2005, § 523(a)(5) excepted from discharge debts to
a former spouse "for alimony to, maintenance for, or support of such
spouse," but not to the extent "such debt includes a liability designated
as alimony, maintenance, or support, unless such liability is actually in
the nature of alimony, maintenance, or support." Former § 523(a)(5).
Odess cites legislative history about this provision that says, as
relevant:

> **Section 523(a)(5)** is a compromise between the House bill and the
> Senate amendment. The provision excepts from discharge a debt owed
> to a spouse, former spouse or child of the debtor, in connection
> with a separation agreement, divorce decree, or property settlement
> agreement, for alimony to, maintenance for, or support of such
> spouse or child but not to the extent that the debt is assigned to
> another entity. If the debtor has assumed an obligation of the
> debtor's spouse to a third party in connection with a separation
> agreement, property settlement agreement, or divorce proceeding,
> such debt is dischargeable to the extent that payment of the debt by
> the debtor is not actually in the nature of alimony, maintenance, or

support of debtor's spouse, former spouse, or child.
124 Cong. Rec. H. 11096 (daily ed. Sept. 28, 1978) (Statement of Rep.
Edwards).

The term "domestic support obligation" was added to the Code by
BAPCPA in 2005, replacing the language in pre-BAPCPA § 523(a)(5).
Section 523(a)(5) now excepts from discharge a debt "for a domestic
support obligation." The definition of "domestic support obligation"
retains the concepts contained in former § 523(a)(5), that a debt be "in
the nature of alimony, maintenance, or support," "without regard to
whether such debt is expressly so designated[.]" § 101(14A).

The 1978 legislative history quoted above does not indicate that all
debts assumed by a debtor pursuant to a marital dissolution judgment or
agreement are support. Even under the pre-BAPCPA statute, an obligation
was support only "to the extent that" the obligation was in the nature of
alimony, maintenance, or support. Former § 523(a)(5). BAPCPA expanded
the type of debt covered under § 523(a)(5), for example by including
debts arising after the filing of the bankruptcy petition. 4 Collier on
Bankruptcy, ¶ 523.11, at 523-79 (16th ed. 2009). The principle that the
obligation must actually be "in the nature of alimony, maintenance, or
support" remained the same. Id. ¶ 523.11[5], at 523-83. Thus, the mere
fact that the obligation in this case was one to assume a debt and hold
Odess harmless does not necessarily mean that the obligation is "in the
nature of support." That question must be answered by considering the
nature of the debt and looking at the circumstances surrounding the
dissolution and the other provisions in the judgment.

Odess cites the Bankruptcy CLE section about the dischargeability of

Page 6 - AMENDED MEMORANDUM OPINION

obligations arising out of the dissolution of a marriage, which explains
that, over time, § 523(a)(5)

> has been construed to include a variety of obligations other than
> those denoted, or even commonly regarded as, spousal or child
> support.  Examples include mortgage obligations included in
> settlement agreements, <u>In re Maitlen</u>, 658 F2d 466 (7th Cir 1981), or
> a share of pension benefits, <u>Bush v. Taylor</u>, 893 F2d 962 (8th Cir),
> <u>aff'd</u>, 912 F2d 989 (1990).

2 <u>Bankruptcy Law</u>, "Discharge and Dischargeability of Claims," § 12.23
(Oregon CLE 1999 & Supp 2007).  This comment does not say that all
obligations to pay mortgage obligations are in the nature of support,
only that some courts have construed some such obligations as support.  I
agree with debtor that the situation in <u>Maitlen</u>, cited in the CLE
materials, is distinguishable, because in <u>Maitlen</u> the debtor spouse was
obligated to pay the mortgage on the house that was occupied by the
former spouse in a situation where there was a difference in the income
of the parties and, among other things, the obligation terminated upon
the spouse's death or remarriage.  In this case, the obligation is to pay
the mortgage on the house debtor himself retained, and the obligation
does not terminate on death or remarriage.

Second, Odess argues that the parties clearly intended that this
obligation would be considered support, and nondischargeable in
bankruptcy.  She relies heavily on ¶ 7.e. of the judgment, which provides
that, "[w]henever one party is required by the terms of this Stipulated
General Judgment to assume responsibility for paying certain debts, the
obligation shall be considered to be in the nature of support, which is
not dischargeable in bankruptcy."  Dissolution Judgment, at ¶ 7.e (p. 7).

Although this provision, at first glance, looks unambiguous, that

Case 10-40718-tmb13   Doc 44   Filed 04/25/11

clarity is undercut by other provisions in the judgment. Most striking is paragraph 3, which unambiguously says that "[e]ach party expressly waives the right to receive spousal support." <u>Id.</u> at ¶ 3 (p. 4). The two provisions are contradictory, making neither a clear statement of the intent of the parties.

The stipulated judgment contains a number of provisions that, read together, make the intent of the parties with regard to support anything but clear. Some of those provisions are plainly inaccurate; others are merely ambiguous when read with the document as a whole. As mentioned above, the waiver of support provision is contrary to the provision making assumption of debts "in the nature of support, which is not dischargeable in bankruptcy." Paragraph 7.c. of the judgment says that "[t]he parties believe that no joint debt currently exists[,]" <u>id.</u> (p. 7), which is plainly wrong in light of the joint mortgage debt that existed and was provided for in the stipulated judgment.

The obligation to assume and pay the mortgage does not terminate on Odess's death or remarriage; paragraph 14 says that all of the provisions of the judgment "shall inure to the benefit of and shall be binding upon the heirs, assigns, personal representatives and all the successors in interest of the parties." <u>Id.</u> at ¶ 14 (pp. 8-9). This is usually indicative of a property division, not a support obligation.

The heading to paragraphs 24 through 32 says "Money Award Pursuant to ORS 18.042 Includes Support Award," then paragraph 29 refers to a "Property Money Award" of $2,250, payable in installments of $225 per month. The only reference in those paragraphs to support is in paragraph 31.a., which provides for 9 percent interest "on the unpaid principal

portion of each monthly SPOUSAL support installment, from and after the date each support payment becomes due and payable." _Id._ at ¶ 31.a (p. 12). There is no provision for payment of spousal support in installments.

The provision in the judgment that any assumption of responsibility for paying debts "shall be considered to be in the nature of support, which is not dischargeable in bankruptcy" is directly contradicted by the provision in which each party expressly waived the right to support. Lee Tyler, a family law lawyer who testified as an expert witness, testified that support is not generally awarded in short-term marriages, but that it depends on the relative incomes of the parties as well as whether one spouse stayed home to care for children or for other reasons, thereby forgoing opportunities in the workplace. He also testified that a provision like the bankruptcy provision in the judgment in this case is routinely included in dissolution judgments, and is usually not negotiated.

The provisions in the judgment obscure the intent of the parties rather than clarify it. Therefore, I need to consider the testimony of the parties as it relates to their situation and intent at the time of the dissolution, in conjunction with the ambiguous provisions of the judgment.

This marriage lasted fewer than two years. The parties had no children. Debtor testified that, when the parties divorced, Odess was planning to get married and move to Washington, D.C., and that she was not to get any support. Debtor's business income in 2009 was $22,337. He testified that this income was $3,000 less than he had earned in 2008,

the year of the divorce. There was no equity in the house, debtor was going to stay in the house, and so he agreed to assume the debt secured by the house.

Odess did not dispute that, at the time of the dissolution, she was planning to remarry and move away. Although she testified that she was unemployed at the time and starting her own business, which had not yet generated any income, she did not testify that she thought she was getting any support in the agreement. To the contrary, she testified that the parties agreed on the property division over a drink, and that because the house had no equity, she agreed to have debtor take over the mortgage. Her plan was to "walk away from it." She said that she did not ask debtor for anything in the divorce.

I conclude that the obligation debtor undertook to assume and pay the mortgage on the jointly owned home that he retained was not in the nature of support. Support is often not awarded in short-term marriages such as this one. Although Odess said she had no income at the time of the dissolution, she had started a business and was getting remarried and moving away. Debtor's income was only approximately $25,000 the year the parties divorced. The evidence does not show that Odess needed support, or that the parties intended that the assumed mortgage obligation would be support. Further, the obligation did not terminate on the death or remarriage of Odess, which is an indication that the award was not intended as support.

There is no evidence that either debtor or Odess thought about the bankruptcy provision or actually intended that the obligation to assume and pay the mortgage on the house was support. In light of all of the

Page 10 - AMENDED MEMORANDUM OPINION

ambiguity in the stipulated judgment, as well as the lack of testimony that either party intended the obligation to be support, I conclude that debtor's obligation to assume and pay the mortgage was not in the nature of support, and therefore is not entitled to priority under § 507(a)(1)(A).

In the conclusion of her Post-Hearing Memorandum, Odess states that, "[e]ven if this court finds that Debtor's obligation to Odese [sic] is not a 'domestic support obligation,' it is an obligation that falls within the scope of 11 U.S.C. § 523(a)(15), and Odess asks for that declaration, in the alternative." Jennifer Odess's Post-Hearing Memorandum at 7. The court declines to address this request. This is a chapter 13 case, and § 523(a)(15) is not an exception to a chapter 13 discharge. § 1328(a).

CONCLUSION

The obligation to assume and pay the mortgage debt was not in the nature of support. Odess's objection to confirmation of debtor's plan is overruled.[2] Debtor's chapter 13 plan will be confirmed.

###

cc:  Bruce H. Orr
     Ted A. Troutman
     Wayne Godare

---

[2] Odess also objected on the ground that debtor had failed to account for certain loan proceeds. He testified at the hearing about what happened to those funds. Odess did not argue in closing that the explanation was inadequate. I therefore treat the objection on the basis of failure to account as having been abandoned. To the extent not abandoned, the objection on this basis is overruled.

Page 11 - AMENDED MEMORANDUM OPINION